NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0207-24

MICHELE ARMINIO,

      Plaintiff-Respondent,

v.

MONROE TOWNSHIP
BOARD OF EDUCATION,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**
**November 24, 2025**
**APPELLATE DIVISION**

Argued November 13, 2025 – Decided November 24, 2025

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6748-23.

Aron G. Mandel argued the cause for appellant (The Busch Law Group LLC, attorneys; Adam S. Weiss, of counsel and on the briefs; Caitlin W. Lundquist and Aron G. Mandel, on the briefs).

Walter M. Luers argued the cause for respondent (Cohn Lifland Pearlman Herrmann & Knopf LLP, attorneys; Walter M. Luers and Christina N. Stripp, on the brief).

The opinion of the court was delivered by

MAWLA, P.J.A.D.

Defendant Monroe Township Board of Education appeals from the trial court's July 26 and August 16, 2024 orders denying its motions for summary judgment and reconsideration. This matter arises from the Board's vote to appoint Matthew Gorham to fill a vacancy on the Board. Plaintiff Michele Arminio alleged the Board's conduct violated the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, because the Board deliberated and decided it would vote for Gorham in closed session before resuming its public session to vote him onto the Board. The trial judge found the Board violated N.J.S.A. 10:4-12(b)(8) of the OPMA and voided Gorham's appointment, but not the votes he participated in before the judge's ruling. We affirm as modified for the reasons expressed herein.

In August 2023, a Board member resigned from her position, creating a vacancy. By statute, the Board had sixty-five days to appoint a new member, and it requested interested candidates apply for the vacant seat. Several candidates applied, including plaintiff and Gorham.

On October 18, 2023, the Board held a public meeting. During the meeting, the Board entered a closed executive session to discuss the candidates for the vacant Board seat. The confidential executive session minutes reflect, after deliberations, the Board members reached a "consensus" to appoint

A-0207-24

Gorham without proceeding with interviews. Then the Board returned to its public session, and its attorney explained the process the Board used to fill the vacancy. The Board then sought nominations to fill the vacancy, a Board member nominated Gorham, and the Board voted to appoint him. Gorham held the seat until May 1, 2024, at which time the winner of the regular election, held on April 16, 2024, was sworn in.

Plaintiff filed a complaint in lieu of prerogative writs seeking a declaratory judgment that the Board's closed session discussion violated the OPMA and voiding its subsequent vote appointing Gorham. Each party subsequently moved for summary judgment.

Although the vote on Gorham's nomination occurred in public, the Board did not dispute it "discussed the pros and cons of . . . Gorham and other candidates" in its closed executive session. The Board argued N.J.S.A. 10:4-12(b)(8), the OPMA's personnel exception, applied and permitted it to conduct an executive session on "matter[s] involving . . . employment, appointment, and termination of employment."

The trial judge voided Gorham's appointment because it violated the OPMA. He found although there was proper notice of the vote, "the Board went into executive session [and] upon completion of the executive session . . . a [B]oard member then . . . immediately, without any comment, just nominated

. . . Gorham, and it was seconded[,] and then there was a vote." The judge held the personnel exception did not apply and relied on Gannett Satellite Information Network, Inc. v. Board of Education of Manville, 201 N.J. Super. 65 (Law Div. 1984), which invalidated the appointment of a Board member "where the public had no opportunity whatsoever to witness the deliberation, policy formulation, or decision-making of [the] public bod[y]." He observed "Gannett held . . . the personnel exception . . . of the [OPMA] does not apply to elected officials . . . whose continued retention in office is dependent on the approval of the public, which is what [Gorham's] case was."

On July 26, 2024, the judge issued an order denying defendant's motion for summary judgment, granting plaintiff summary judgment, and entered a judgment declaring the Board's appointment of Gorham at the October 18, 2023 meeting void. Defendant moved for reconsideration.

Defendant argued the trial judge mistakenly applied the law and did not consider the public policy implications of voiding Gorham's appointment. It asserted Gannett was not binding and supported summary judgment because it stood "for the proposition that the Board . . . can exclude members of [the] public from its deliberations on qualifications of . . . candidates."

Defendant asserted Kean Federation of Teachers v. Morell, 233 N.J. 566 (2018), controlled because it held a public deliberation was enough to satisfy

the OPMA, and in Gorham's case, the Board attorney and president discussed his nomination for seven minutes in public prior to taking a vote, which itself was a form of public deliberation. Following the vote, there were approximately forty minutes of public deliberations during which the Board fielded questions from the public, including plaintiff, about other matters. Defendant noted the OPMA has neither a time requirement for, nor specifies the manner of, the public deliberations. Further, the OPMA was not violated because the personnel exception was not limited to public employees.

The discussion turned to the retroactive effect of the judge's order on votes Gorham had cast and whether the order would void those votes. Plaintiff's counsel replied she was not "seeking to void anything."

The trial judge denied the reconsideration motion. He stated the summary judgment decision was not based on Kean because the issue was "not the adequacy of the public discussion" but instead "the impropriety in the private discussions that occurred outside of the public's viewing." The judge stated, "Kean and Gannett . . . must be read together. And when that is done . . . they are consistent." Indeed, "Gannett . . . held . . . where a public body is appointing an individual to fill a position normally filled by an elected official, the reasons for allowing . . . public scrutiny of the actions taken are even more compelling." Kean was different because it "addressed the treatment of

5

employees, not elected public officials. . . . In <u>Kean</u>, the governing body was addressing the hiring, retention, and termination of employees."

The judge found because "there was no other exception to the [OPMA] for the Board to have substantive discussions, which they obviously did as to the appointment of . . . Gorham in a private session, [t]hese [discussions] just have to be done in the public." Indeed, "an appointment to the Board of a member that would normally have to be elected does not come within the personnel exception to the" OPMA. "Since there was substantive discussion of the applicants in private session in violation of the [OPMA], the only remedy to cure the error is . . . to rescind the appointment and have the Board redo the appointment in a public session." Although defendant argued other boards acted in a similar manner as in Gorham's case, the judge found it failed to present any evidence to support its assertion. Regardless, the argument was unpersuasive because the violation of the OPMA by other boards did not make defendant's conduct lawful.

The trial judge concluded his July 24 ruling would not be retroactive because there was no evidence presented "a particular vote would . . . cause harm[,] . . . prejudice[,] or damages to either party" by rescinding Gorham's appointment. The judge later amplified his ruling to note he was unaware

Gorham was not reelected and was not a part of the Board when he heard oral argument on the initial summary judgment motion.

I.

Defendant argues the judge erred when he held the OPMA prohibits closed session discussions regarding Board candidates. New Jersey statutes and Gannett, which defendant claims the judge misinterpreted, permit private, closed session meetings to discuss the qualifications of candidates. According to defendant, the OPMA is violated only when a board interviews, nominates, or votes on candidates in a closed session, which did not occur here.

Alternatively, defendant alleges, even if the trial judge correctly found it violated the OPMA, he still erred by voiding its public vote appointing Gorham to fill the vacancy, because the vote occurred at a properly noticed meeting following a public debate. It further contends voiding the vote was not the appropriate remedy on the facts presented because injunctive relief is only warranted where there is a pattern of OPMA violations.

Defendant asserts if we affirm the trial judge's interpretation of the OPMA, we must reverse the portion of the August 2024 order, which declined to retroactively vacate the votes cast by Gorham. This is because the judge could not, on one hand, find Gorham's appointment was void, but on the other hand, not void the votes he participated in during his time as a Board member.

II.

We review a summary judgment order de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). The court must first decide whether there was a genuine issue of fact; if there is none, it then decides whether the trial court's ruling on the law was correct. Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987).

Questions of statutory interpretation are also subject to de novo review. Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014). "'[W]e look first to the plain language of the statute[' and] . . . give it its ordinary meaning." McGovern v. Rutgers, The State Univ., 211 N.J. 94, 108 (2012) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). "If the language is clear, our task is to apply that language to the situation that confronts us." Ibid.

The OPMA "established procedures governing the conduct of meetings of public bodies" and made "explicit the legislative intent to ensure the public's right to be present at public meetings and to witness government in action." Kean, 233 N.J. at 570 (citing N.J.S.A. 10:4-7). "That legislative intent is balanced by an express recognition that public bodies must be allowed to exercise discretion in determining how to perform their tasks." Ibid. (citing

8                                                          A-0207-24

N.J.S.A. 10:4-12(a)).  The OPMA "should be 'liberally construed in order to accomplish its purpose and the public policy of this State.'"  McGovern, 211 N.J. at 99-100 (quoting N.J.S.A. 10:4-21).

"The OPMA is violated when formal action is taken in [a] closed session and never ratified or even discussed in a public session."  Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 238 (App. Div. 2009).  "Our State's commitment to transparency in the conduct of governmental affairs has deep roots."  Opderbeck v. Midland Park Bd. of Educ., 442 N.J. Super. 40, 51 (App. Div. 2015).  "[S]ecrecy in public affairs undermines the faith of the public in government . . . ."  Id. at 54 (quoting N.J.S.A. 10:4-7).  The OPMA "[e]nsure[s] the right of [New Jersey's] citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way."  Ibid. (quoting N.J.S.A. 10:4-7).

The OPMA outlines exceptions to the requirement for open public meetings.  N.J.S.A. 10:4-12.  As relevant here, the law provides:

> b.  A public body may exclude the public only from that portion of a meeting at which the public body discusses any:
>
> . . . .
>
> (8) matter involving the employment, appointment, termination of employment, terms

and conditions of employment, evaluation of the performance of, promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting[.]

[N.J.S.A. 10:4-12(b)(8) (emphasis added).]

When the OPMA is violated, relief is limited to three remedies. See N.J.S.A. 10:4-15. Specifically, the court shall void an action taken by a public body at a meeting, which does not conform to the statute's requirements. N.J.S.A. 10:4-15(b). In addition, "[a]ny person . . . may apply to the Superior Court for injunctive orders or other remedies to [e]nsure compliance with the provisions of [the OPMA], and the court shall . . . provide such remedies as shall be necessary to [e]nsure compliance with the provisions of [the OPMA]." N.J.S.A. 10:4-16.

Here, the record shows Board members reviewed and ranked their top choices before the public meeting. Once in its closed session, the Board discussed the pros and cons of the top three candidates and agreed to nominate Gorham. The record reflects the Board was in closed session for forty-five minutes. When it returned to the public session, its attorney spoke about the fact the county superintendent had ceded jurisdiction back to the Board to fill

10

the vacancy. The Board president then stated, the Board "had a very long discussion [about] . . . what action [it] wanted to take[,] . . . decided that [it] had ample time to review all of the applications [and] all of the information that was provided by [t]hose that sent in an application[, and] therefore [would] not be conducting any interviews." The president then opened the floor for nominations, a Board member nominated Gorham, another member seconded the nomination, and the Board voted.

Our difficulty with the Board's conduct is not whether it could move into closed session to discuss Gorham's appointment pursuant to N.J.S.A. 10:4-12(b)(8); it could. However, the fact all its deliberations regarding candidate qualifications and whether to interview those candidates took place in private, without giving the public any insight into these decisions, was problematic. Substantively, the public only witnessed the nomination and vote to install Gorham. The Board did not take any questions or comments from the public about the candidates or the process because it moved directly to the nomination and vote.

This move was even more surprising considering the Board's notice, announcing the vacancy and inviting interested candidates to apply, stated candidates would be interviewed at the meeting. District Policy 0143, which governs Board member election and appointment, states: "In considering

11

candidates who have expressed an interest in a vacancy, the Board . . . will interview interested candidates in public." Monroe Twp. Bd. of Educ., District Policy on Board Member Election and Appointment 0143 (rev. 2023). For these reasons, we conclude the Board violated the OPMA.

However, we part ways with the trial judge's reliance on Gannett. The plain language of N.J.S.A. 10:4-12(b)(8) applied to Gorham because the Board was discussing a "matter involving the . . . appointment . . . [of a] specific prospective public officer." Gannett correctly found the closed session interview, nomination, and appointment of a candidate to fill the vacancy in that case violated the OPMA. However, we disapprove of its holding N.J.S.A. 10:4-12(b)(8) does not apply to elected officials who are appointed by a board and the appointment of a board member in lieu of an election removes the board's action from the ambit of the statute. The plain language of N.J.S.A. 10:4-12(b)(8) simply does not support that conclusion.

A board may discuss candidates in closed session. However, when it resumes the public session, it must explain any decisions taken during the closed session and allow public discussion about those decisions and other matters the public wishes to raise before it moves to nominations and a vote to fill a vacancy.

A-0207-24

III.

The trial judge did not err when he declined to retroactively void the votes in which Gorham had participated. Equitable remedies, such as whether to afford a remedy retroactivity, "are largely left to the judgment of the [trial] court, which has to balance the equities and fashion a remedy, [and] will be reversed only for an abuse of discretion." Customers Bank v. Reitnour Inv. Props., LP, 453 N.J. Super. 338, 348 (App. Div. 2018).

Moreover, the de facto officer doctrine applied. Under the doctrine,

> one who claims to be a public officer while in possession of an office and ostensibly exercising its functions lawfully and with the acquiescence of the public is a de facto officer whose lawful acts, so far as the rights of others are concerned, are, if done within the scope and by the apparent authority of the office, as valid and as binding as if the officer were legally qualified for the office and in full possession of it.

[In re Fichner, 144 N.J. 459, 468 (1996).]

On reconsideration, defendant expressly argued against the judge applying his July 2024 ruling retroactively. It now argues there was error because the judge did not make his decision retroactive. "The doctrine of judicial estoppel operates to 'bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted.'" Cummings v. Bahr, 295 N.J. Super. 374, 385 (App. Div. 1996) (quoting N.M. v. J.G., 255 N.J. Super.

13

423, 429 (App. Div. 1992)).  The facts demonstrate the Board's argument is barred by judicial estoppel.

Notwithstanding the applicability of these doctrines, the trial judge found no evidence "a particular vote would . . . cause harm[,] . . . prejudice[,] or damages to either party" by rescinding Gorham's appointment.  Therefore, the decision not to afford retroactive effect to the July 2024 ruling was a sound exercise of discretion.

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division