LARIO, J.T.C.
This is an appeal by Browning Ferris Industries of South Jersey, Inc. (Browning Ferris) from a final determination of the Director, Division of Taxation, Department of the Treasury (Director) assessing against it additional taxes, penalties and interest pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. The final determination letter assessed plaintiff for additional sales and use taxes in the principal amount of $83,830.23. Subsequently, the Director reduced his claim to an assessment of $69,995.73. Plaintiff has conceded liability for $23,247.88, but it disputes the balance of $46,747.85.
At issue in these proceedings is whether Browning Ferris, who, pursuant to an agreement with Monroe Township, operated a sanitary landfill on property owned by Monroe Township, is entitled, as claimed by it, to an exemption, pursuant to N.J.S.A. 54:32B-8.22, from the imposition of sales and use taxes on the purchases made and utilized by it for the closure of the landfill. N.J.S.A. 54:32B-8.22 (hereinafter § 8.22), in effect at the time of the purchases, provided:
[receipts from sales made to contractors, subcontractors or repairmen of materials, supplies or services for exclusive use in erecting structures or building on or otherwise improving, altering or repairing real property of *98 organizations described in [N.J.S.A. 54:32B-9(a) and (b) ] are exempt from the tax imposed under that act, provided any person seeking to qualify for this exemption shall do so pursuant to such rules and regulations and upon forms as shall be prescribed by the director.
The parties filed a stipulation of facts which I have evaluated and find as most pertinent the following: The Township of Monroe, County of Middlesex, a municipal corporation of the State of New Jersey, and Princeton Disposal Service, Inc. (Princeton Disposal) entered into a five-year contract beginning July 1, 1973 for the operation of a sanitary landfill on properties owned by the Township of Monroe whereby, among other terms and conditions, Princeton Disposal agreed to dispose of garbage, refuse and other waste materials originating from the township, and it had the right to dispose of like materials emanating from outside the township. The contract further stipulated that the operation of the landfill was subject to the rules and regulations of the New Jersey Department of Environmental Protection (DEP) and the New Jersey Public Utility Commission (PUC). Shortly thereafter, Princeton Disposal was issued a registration by the DEP.
In 1976, Princeton Disposal merged with Browning Ferris with the latter emerging as the surviving corporation. Thereafter, Browning Ferris continued operation of the landfill. Shortly prior to expiration of the contract, Monroe Township adopted a resolution wherein it determined that the closure of the landfill at expiration of the contract would be in the best interest of the Township and the health, safety and welfare of the Township’s residents; and, it recommended the closure of the landfill to the Solid Waste Administration of the DEP and the PUC.
Several weeks later the DEP issued an order to Browning Ferris to comply with the requirements of the Solid Waste Administration for the proper closure of the landfill and directed Browning Ferris to submit a closure engineering design to the Solid Waste Administration.
*99 Browning Ferris advised the DEP that it would not comply with its order, and that the cost of filing a closure plan and the implementation of same did not rest with Browning Ferris.
As a result of Browning Ferris’ reaction, the DEP initiated a civil action in the New Jersey Superior Court, Chancery Division, for an order requiring Browning Ferris to comply with the DEP’s order. Browning Ferris filed an answer maintaining it neither owned nor controlled the landfill and was not responsible for any conditions existing at the site. Browning Ferris also filed a third-party complaint against Monroe Township alleging that the legal responsibility for the ultimate closure of the landfill was with the township, and, in the event, it was held responsible for the demands in the complaint, it demanded indemnification from the township. The township filed a denial and counterclaimed that Browning Ferris was legally responsible for the proper closure.
These proceedings resulted in an order entered by the Chancery Division of the Superior Court whereby Browning Ferris was required to “install a system of collection trenches to include sump pumps and piping at the landfill site” and it further ordered Browning Ferris “to properly dispose of the leachate collected by said system of interception trenches” for purposes of leachate containment at the Monroe landfill site. Subsequently, the Chancery Division entered a consent order, which was complied with by Browning Ferris, concerning the methodology, compliance and time schedule for the proper closure of the landfill and the construction of the leachate containment system in compliance with the court’s original order. The amount of sales and use taxes contested by plaintiff are the taxes attributable to the purchases made by Browning Ferris related to work performed on that portion of the landfill owned by Monroe Township pursuant to the consent order.
The sole issue presented in this dispute is whether Browning Ferris is exempt from sales and use taxes attributable to the aforesaid purchases by reason of § 8.22. Plaintiff alleges it is not liable for the tax imposed because it has met all the *100 requirements of § 8.22 to wit: it is a contractor, subcontractor or repairman; the materials used were in furtherance of its contract with and for the exclusive use of the owner of the land, Monroe Township, an exempt public organization; the materials were entirely consumed on the township’s property; and, the costs incurred were covered by its contract with the township.
The Director denies that the statute in issue exempts Browning Ferris from liability because the exempt organization, Monroe Township, did not contract for the materials, supplies or services purchased; the exempt organization was not the ultimate consumer of the items purchased; and the exempt organization was not ultimately responsible for the costs of the purchases.
In order to properly interpret the Legislature’s intent in adopting the statute in question it is important that legislative policy considerations be kept in mind. Clay v. E. Orange, 177 N.J.Super. 79, 424 A.2d 1199 (Law Div.1980), aff’d 181 N.J Super. 40, 436 A.2d 553 (App.Div.1981), aff’d 91 N.J. 429, 452 A.2d 1323 (1982). Therefore, attention must be given to the general scheme of these sales taxes and the exceptions thereto. Pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., there is imposed a tax upon “the receipts from every retail sale of tangible personal property, except as otherwise provided in this act.” N.J.S.A. 54:32B-3(a). An exemption to the imposition of this tax was granted by the Legislature to the State of New Jersey, its political subdivisions or its certain public entities “where it is the purchaser, user or consumer....” N.J.S.A. 54:32B-9(a)(l) (hereinafter § 9). The Legislature by the adoption of § 8.22, has also extended this exemption to include sales of contractors, subcontractors and repairmen of materials, supplies or services “for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property of organizations described in ... [§ 9].”
*101 It is well established that statutes providing for exemption from taxes are to be strictly construed against those claiming entitlement thereto.
[W]here the taxpayer seeks exemption or deduction urging exclusion from the scope of the taxing statute, “the probable legislative intent is one of inclusion and exemptions are to be construed narrowly." Fedders [Financial Corporation v. Director, Division of Taxation], 96 N.J. [376] at 386 [476 A.2d 741 (1984)]; Boys’ Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 398 [371 A.2d 22] (1977). The reason for this rule of construction is plain. Taxes “are demanded and received in order for government to function.” Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358, 363 [221 A.2d 15] (1966). Exemptions “from taxation represent a departure and consequently they are most strongly construed against those claiming exemption.” [Amerada Hess Corp. v. Taxation Div. Director, 107 N.J. 307, 319-320, 526 A.2d 1029 (1987) ]
This strict statutory construction is applicable to exemptions contained in the New Jersey Sales and Use Tax Act. Mal Bros. v. Taxation Division Director, 124 N.J.Super. 55, 61, 304 A.2d 750 (App.Div.1973).
According to the legislative scheme as set forth in § 9 of this act, when an exempt organization makes purchases of tangible personal property or services for its own use or consumption, it is not required to incure the additional expense of sales taxes; and when the exempt organization’s improvement or repairs is contracted by it to a nonexempt person, the exemption is extended by § 8.22 of this act to those related sales, otherwise, the taxes would be added to the contract price ultimately paid for by the exempt organization. It is the proper function of the judiciary to give effect to the obvious purpose of the Legislature. New Capital Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957).
The obvious legislative purpose of § 8.22 is to complement § 9 by exempting the payment of sales tax when the tax would have been exempt initially, had the exempt organization itself performed the improvement or repairs, rather than have the work contracted and completed for it by another. Its purpose is to exempt the exempt organization from either directly or indirectly paying the tax. However, where there is no resulting benefit to the exempt organization, its purpose is not to benefit a purchaser, who is not otherwise exempt. The Appellate *102 Division in Mal Bros., supra, interpreted the legislative intent of this exemption as follows:
t is evident that the Legislature did not intend to exempt all tangible personal property sold to contractors for exclusive use in improving, altering or repairing real property owned by exempt organizations. [124 N.J.Super. at 61, 304 A.2d 750]
Although in Mal Bros, the issue involved the type of personal property exempted, the logic of the Appellate Division’s interpretation of this section of the act is applicable to the present case.
From an examination of the original agreement entered into between Monroe Township and Princeton Disposal and the facts stipulated, I conclude that, in effect, Browning Perris’ predecessor in title leased the township land and Princeton Disposal and Browning Ferris operated the landfill as independent contractors. As a result of the legal proceedings, the Chancery Division concluded that Browning Perris was the party obligated to provide for the environmentally sound closure of the landfill. No order was entered adverse to Monroe Township. The resulting orders entered by the court legally obligated Browning Perris, and not the township, to close and protect the landfill in accordance with the standards set forth in the consent order. The purchases in issue were made pursuant to the chancery court’s orders, not by reason of a contract entered into between Browning Perris and Monroe Township, and the purchases were utilized by Browning Perris in the fulfillment of its legal obligations as determined by the court.
Since Monroe Township was not responsible for, and did not contract with Browning Perris to perform, the work required by the Superior Court’s order to close and contain the landfill, and because Monroe Township was not obligated for the payment of the cost of the materials or the resulting tax, the purchases by Browning Perris are not exempt from sales taxes under N.J.S.A. 54:32B-8.22. Judgment will be entered affirming the Director’s revised assessment of $69,995.73.