NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1264-17T2

ROSANNA PRUENT-STEVENS,

      Plaintiff-Respondent,

v.

TOMS RIVER TOWNSHIP,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 1, 2019**
>
> **APPELLATE DIVISION**

Argued December 5, 2018 – Decided April 1, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Tax Court of New Jersey, Docket No. 010172-2016, whose opinion is reported at 30 N.J. Tax 200 (Tax 2017).

Anthony Merlino, Assistant Township Attorney, argued the cause for appellant (Kenneth B. Fitzsimmons, Township Attorney, attorney; Anthony Merlino, on the briefs).

Todd W. Heck argued the cause for respondent (Testa Heck Testa & White, PA, attorneys; Todd W. Heck, on the brief).

Jamie M. Zug, Deputy Attorney General, argued the cause for amicus curiae Director, Division of Taxation (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of

counsel; Steven J. Colby, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Defendant Township of Toms River appeals from the Tax Court's final judgment conferring upon plaintiff Rosanna Pruent-Stevens a military veteran's property tax exemption, for the tax year 2016, as the surviving spouse of her first husband – an honorably discharged, decorated Vietnam veteran who contracted a service-related disability as a result of his exposure to Agent Orange – who qualified for an exemption pursuant to N.J.S.A. 54:4-3.30(b)(2). Pruent-Stevens v. Twp. of Toms River, 30 N.J. Tax 200 (Tax 2017). We reverse. Plaintiff's right to the exemption continued only during her widowhood correlated to the qualifying veteran – her first husband – and was extinguished, per the terms of the statute, when she remarried after the death of that veteran.

N.J.S.A. 54:4-3.30(b)(2) provides:

> The surviving spouse of any citizen and resident of this State who was honorably discharged and, after the citizen and resident's death, is declared to have suffered a service-connected disability as provided in subsection a. of this section, shall be entitled, on proper claim made therefor, to the same exemption the deceased would have become eligible for. The exemption shall continue during the surviving spouse's widowhood or widowerhood, as the case may be, and

while a resident of this State, for the time that the surviving spouse is the legal owner thereof and actually occupies the dwelling house or any other dwelling house thereafter acquired.

The Tax Court considered the permutations to N.J. Const. art. VIII, § 1, ¶ 3 and N.J.S.A. 54:4-3.30 since its enactment in 1948, as well as N.J.S.A. 54:4-3.31 which sets forth the exemption-claim-application procedures. 30 N.J. Tax at 209-11, 216. Those procedures require the surviving spouse to file a "writing under oath" with the tax assessor establishing, among other criteria, "that the claimant is a resident of this State and has not remarried." N.J.S.A. 54:4-3.31.

The Tax Court rejected the Township's interpretation of the statute, that plaintiff's remarriage extinguished her entitlement to the exemption, and observed that "there is sufficient ambiguity as to whether ['has not remarried'] indicates a present marital status or an event that has occurred in the past." 30 N.J. Tax at 224-25. The court concluded the phrase, "has not remarried," referred to plaintiff's "current marital status during 'widowhood,'" id. at 202, and "[a]ccordingly, the surviving spouse's exemption is available only during periods when the surviving spouse is not married," id. at 225. It also found "the term 'widow' . . . defines a person and not the continued marital status of the person." Id. at 202.

The court reasoned "that fundamental fairness and reasonableness require that consideration of a surviving spouse's marital status should not commence until the [United States Veteran's Administration (VA)] has determined the veteran's 100% disability." Id. at 225. The Tax Court thus held that plaintiff – whose second husband passed away in 1997 – met the statutory eligibility requirements for the exemption because she was unmarried when she first applied for the exemption after the VA posthumously declared her first husband had a service-connected disability[1] in February 2014. Id. at 204-206.

Our review of a Tax Court decision is ordinarily deferential, Estate of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011), because "judges presiding in the Tax Court have special expertise," Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990). Our review of a Tax Court's legal determinations, however, is de novo. United Parcel Serv. Gen. Servs. Co. v. Dir., Div. of Taxation, 430 N.J. Super. 1, 8

---

[1] The Tax Court explained the legal developments which led to the VA's acknowledgement, including the Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11 (1991), and "a number of court decisions," see, e.g., Nehmer v. U.S. Veterans' Admin., 712 F. Supp. 1404 (N.D. Cal. 1989), aff'd, 284 F.3d 1158 (9th Cir. 2002), which led to the adoption of 38 C.F.R. § 3.816 (2013) (titled "Awards under the Nehmer Court Orders for disability or death caused by a condition presumptively associated with herbicide exposure"). 30 N.J. Tax at 204 nn.4-5.

(App. Div. 2013), aff'd, 220 N.J. 90 (2014). "Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Saccone v. Bd. of Trs., of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014); see also Twp. of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 86 (2007).

We begin our interpretation, recognizing our Supreme Court's declaration that "[a]ll real property within New Jersey is subject to taxation unless expressly exempted by the Legislature." Twp. of Holmdel, 190 N.J. at 87 (citation omitted). The 1947 New Jersey Constitution mandated exemptions from real property taxes for veterans of the United States armed forces and for

> [t]he widow of any citizen and resident of this State who has met or shall meet his death on active duty in time of war in any such service shall be entitled, during her widowhood, to the exemption in this paragraph provided for honorably discharged veterans and to such further exemption as from time to time may be provided by law.
>
> [N.J. Const. art. VIII, § 1, ¶ 3.]

In partial recognition of that provision the New Jersey Legislature enacted N.J.S.A. 54:4-3.30 which provides for the exemption.

We must look first to the plain language of the statute "to accomplish our goal of determining and effectuating the Legislature's intent." In re

Middlesex Reg'l Educ. Servs. Comm'n Name Change Request, 453 N.J. Super. 243, 251 (App. Div. 2018); see also Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553-54 (2009). We seek "further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008).

N.J.S.A. 54:4-3.30(b)(2) grants a surviving spouse's entitlement, "on proper claim made therefor, to the same exemption the deceased [veteran] would have become eligible for. The exemption shall continue during the surviving spouse's widowhood or widowerhood." Although several tax exemption provisions include a "definitions" section, see, e.g., N.J.S.A. 54:4-3.6i; -3.49; -3.60; -3.130; -3.140; -3.152, N.J.S.A. 54:4-3.30 does not. Nor does the Tax Code otherwise contain a definition of "widowhood" or "widowerhood."[2]

We must therefore "read and construe[]" the words "with their context" and, unless another or different meaning is specified, give them "their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such

---

[2] N.J.S.A. 54:4-8.10(j) defines surviving spouse as "the surviving wife or husband of any of the following, while he or she is a resident of this State, during widowhood or widowerhood."

technical or special and accepted meaning." N.J.S.A. 1:1-1; see also Pub. Serv. Elec. & Gas Co. v. Twp. of Woodbridge, 73 N.J. 474, 478 (1977); In re Plan for the Abolition of the Council on Affordable Housing, 214 N.J. 444, 467-68 (2013).

While we found no definition of "widowhood" in consulted law dictionaries, Black's Law Dictionary 1832 (10th ed. 2014) defines a "widow" as, "[a] woman whose husband has died and who has not remarried." Ballentine's Law Dictionary 1368 (3d ed. 1969) provides an almost identical definition but adds, "There is authority which holds that the term, as used in some statutes, may be applied to a woman in respect of her deceased husband, although she has remarried since his death." Merriam-Webster defines "widowhood" as "the fact or state of being a widow" and "the period during which a woman remains a widow," Merriam-Webster's Collegiate Dictionary 1431 (11th ed. 2014), and defines "widow," in pertinent part, as "a woman who has lost her husband by death and usu[ally] has not remarried," ibid.

New Jersey case law has generally followed the majority of dictionary definitions: "The word 'widow,' 'the meaning of which is familiar, well fixed, and certain, and which popularly and legally means a woman who has lost her husband by death and has not taken another; the surviving lawful wife of a

decedent.'" Montclair Tr. Co. v. Reynolds, 141 N.J. Eq. 276, 279 (Ch. 1948) (quoting 68 C.J. 263 (1934)).

Plaintiff cites Hansen v. Brann & Stewart Co., 90 N.J.L. 444, 448 (Sup. Ct. 1917), contending the court "determined that a widow's status continued notwithstanding her remarriage." We are not persuaded the court's holding is apposite. In Hansen, petitioner's husband was killed in the course of his employment, thus entitling her, as a dependent, to three-hundred weekly payments under the Workmen's Compensation Act of 1911. Id. at 446. The Legislature amended the act in 1913 to provide "that, if the widow of a deceased employe[e] remarr[ies] during the period covered by weekly payments, the right of the widow 'under the section shall cease.'" Id. at 445. The petitioner remarried one year after the amendment. Id. at 446. The court, interpreting the statute, stated, "If, under the [1911] act, the petitioner, upon the death of her husband, was entitled to compensation during [three-hundred] weeks, she acquired a vested right, which could not be legally abridged by subsequent [1913] legislation." Ibid. Thus, the court found the addition of the remarriage disqualification provision to the act did not retroactively bar the petitioner from receipt of benefits engendered by the 1911 act. See ibid.

Addressing the respondent's argument that "the act provides that the weekly payments shall be made to the widow" and the petitioner ceased to be a

widow upon her remarriage, the Hansen court determined the widow's remarriage did not change her legal status "so as to affect any vested rights she had acquired before her remarriage." Id. at 447. The court's later statement that based upon "the general sense of mankind, and . . . the legal sense, though the widow remarried, she did not cease thereby to be the widow of the deceased husband," was made in dicta and without citation to any legal authority. Id. at 448.

Here, plaintiff did not have a vested right when she remarried. See Del Priore v. Edison Twp., 26 N.J. Tax 502, 514 (Tax 2012) (stating "there is no statutory right to an exemption for any period preceding the filing of a claim"), aff'd o.b., A-4447-11 (App. Div. May 22, 2013). Moreover, the Hansen court was not considering "widow" in the context of the tax exemption statutes.

The language chosen by the Legislature, "during the surviving spouse's widowhood," N.J.S.A. 54:4-3.30(b)(2), suggests a meaning consistent with the definition: "a woman who has lost her husband by death and has not taken another," Montclair Tr. Co., 141 N.J. Eq. at 279 (quoting 68 C.J. 263 (1934)). "During," meaning "throughout the duration of," Merriam-Webster's Collegiate Dictionary, at 388, and the suffix "-hood," meaning, in part, "state : condition : quality : character," id. at 597, when used together, suggest an intentional reference to a state, rather than to a person. And the phrase, in context, points

to the period of time "during" which the surviving spouse is the widow or widower of the veteran.

Furthermore, the legislative language, when read in context with N.J.S.A. 54:4-3.31 – setting forth the application procedures for the exemption – is more in harmony with the majority of dictionary definitions than with plaintiff's suggestion that Hansen applies. Inasmuch as we are considering other portions of the veterans' exemption provisions, we heed the Court's prescription that

> [s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole. When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will. Statutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole.
>
> [In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (citations omitted).]

The claim-application provision requiring the surviving spouse to testify that she has not remarried, N.J.S.A. 54:4-3.31, is not limited by a timeframe. Again, read in context – and in harmony with N.J.S.A. 54:4-3.30(b)(2), see Fiore v. Consol. Freightways, 140 N.J. 452, 466 (1995) (holding "[a] statute should be read as a whole and not in separate sections") – the provision calls upon the surviving spouse to attest that she or he has not remarried since the

veteran died. We agree with amicus, Director of the New Jersey Division of Taxation (Division), that the "not remarried" requirement makes little sense unless the Legislature meant that remarriage ends a surviving spouse's eligibility for the exemption. See State v. Gill, 47 N.J. 441, 444 (1966) (requiring avoidance of statutory interpretations "which lead to absurd or unreasonable results").

Although resort to the legislative history is unnecessary given that "the statutory language is clear and unambiguous, and susceptible to only one interpretation," In re Passaic Cty. Utils. Auth., 164 N.J. 270, 299 (2000), various legislative statements and reports make clear that, while the disabled veteran and the surviving spouse may "continue to receive the tax exemption," the "exemption ends when the surviving spouse remarries." Sponsor's Statement to A. 2426 5 (L. 2007, c. 317); Sponsor's Statement to S. 188 5 (L. 2007, c. 317); see also S. Budget and Appropriations Comm. Statement to A. 2426 (Dec. 3, 2007); Assemb. Hous. and Local Gov't Comm. Statement to A. 2426 (June 12, 2006); S. Cmty. and Urban Affairs Comm. Statement to S. 188 (May 11, 2006). Similarly, the Introductory Statement to the 1954 Senate Bill, which first extended the tax exemption to widows, provided, "This bill is designed to continue the exemption of the dwelling house of certain disabled veterans to their widows during widowhood and while they are residents of

New Jersey." Introductory Statement to S. 19 3 (L. 1954, c. 148). The language pertaining to the exemption's cessation upon remarriage applies to both section 54:4-3.30(b)(1) and section 54:4-3.30(b)(2), which contain almost identical terms, including the phrase "during the surviving spouse's widowhood or widowerhood."[3]

The Tax Court emphasized that a committee statement to a 1977 amendment permitted a widow to "carry the exemption with her to any dwelling house she may acquire, with the requirement retained that she be residing in the dwelling house and not remarried." S. Revenue, Fin. and Appropriations Comm. Statement to S. 1789 (June 20, 1977). But the court misquoted this statement as "not be remarried," 30 N.J. Tax at 210. The court apparently repeated the misquote as evidenced by its added emphasis and subsequent question: "Does 'has not remarried' mean 'is not remarried' or 'unmarried' as in the present tense, so as to permit a suspension of the exemption during a remarriage? Or does it mean 'has not ever remarried' in the past tense, resulting in the extinguishment of the exemption upon

---

[3] N.J.S.A. 54:4-3.30(b)(1) grants the exemption to the surviving spouse of a qualifying veteran "who at the time of death was entitled to the exemption provided under this act," whereas N.J.S.A. 54:4-3.30 (b)(2) grants the exemption to the surviving spouse of a qualifying veteran "who was honorably discharged and, after the [veteran's] death, is declared to have suffered a service-connected disability."

remarriage?" Id. at 213. To the extent that the phrase "not remarried" in the committee statement creates confusion regarding its tense, we determine any confusion is eliminated by the plain text of the statute enacted at that time which specified, "has not remarried." L. 1977, c. 377, § 2.

Just as the legislative history indicates that remarriage extinguishes the right to the exemption, the regulations implementing the exemption – promulgated in 2006, and expired in 2013,[4] 43 N.J.R. 1203(a) (Apr. 6, 2011) – mirrored the statute, requiring that the surviving spouse "[r]emain unmarried." N.J.A.C. 18:28-2.3(a)(2). One of the regulations further provides, "Remarriage of the surviving spouse terminates the tax exemption. The exemption is not regained where the second marriage ends in divorce, but is regained if the remarriage is annulled." N.J.A.C. 18:28-2.5(b).

While "an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits," "[g]enerally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306 (1993). Given that deference, the regulations persuade us that the statutory exemption scheme

_____

[4] Although the regulations expired in 2013, they were readopted in July 2018. See 50 N.J.R. 1501(a) (July 2, 2018). Sections 2.3 and 2.5 remained unchanged; remarriage terminates the exemption. Ibid.

contemplates the exemption ends upon a surviving spouse's remarriage. Indeed, the Legislature was aware of the 2006 regulation disqualifying remarried spouses when it added N.J.S.A. 54:4-3.30(b)(2) in 2007 to expand eligibility to surviving spouses of veterans declared disabled after death;[5] it did not countermand or even address that regulation.

Similar to the regulations, Attorney General Formal Opinion 1960 – No. 7 (Apr. 7, 1960) addressed "whether a former widow of a war veteran who, upon remarriage, loses the exemption from taxation[,] . . . is entitled to have such exemption restored upon the termination of her second marriage by divorce." Citing Block v. P. & G. Realty Co., 96 N.J. Eq. 159, 160 (Ch. 1924) and Montclair Trust Co., 141 N.J. Eq. at 279, the Attorney General concluded, "a taxpayer who would otherwise be entitled to a tax exemption as the widow of a war veteran loses her exemption upon remarriage, since she is no longer a widow." Attorney General Formal Opinion 1960 – No. 7. The opinion, like the regulations, is not binding on this court. Opderbeck v. Midland Park Bd. of Educ., 442 N.J. Super. 40, 56 (App. Div. 2015). It is, however, binding on the Division. Ibid. And the Division has consistently interpreted the exemption statutes consistent with the opinion for over half a century, abiding

---

[5] The amendment was effective January 13, 2008. L. 2007, c. 317.

by what we perceive to be the Legislature's intent that the exemption ceases upon remarriage.

We are unpersuaded by plaintiff's argument that neither the expired regulations nor the Attorney General's opinion addressed "the effect of a termination of a second marriage by death." The termination of any marriage by death – like termination by divorce – does not make that marriage a nullity; neither divorce nor death acts as an annulment. See N.J.S.A. 2A:34-1 (listing causes for judgments of nullity; death is not included); see also Sanchez v. Olivarez, 94 N.J. Super. 61, 64-65 (Law Div. 1967) (treating termination by death as equivalent to termination by divorce). The exception recognized by N.J.A.C. 18:28-2.5(b) in the case of annulment – rendering a marriage "utterly void ab initio," Wigder v. Wigder, 14 N.J. Misc. 880, 881 (Ch. 1836) – is consistent with the legislative intent.

Likewise, we conclude the Tax Court traversed too far afield to ascertain the legislative intent of the exemption statutes by utilizing provisions of the Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-2(u), and the Judicial Retirement System Act, N.J.S.A. 43:6A-3(t), defining "widow" to buttress its holding that, in the context of those statutes, "remarriage extinguishes entitlement to the pension not widowhood," 30 N.J. Tax at 221-22; and its reliance on publications from the Division and the Office of

Legislative Services in determining the meaning of "remarriage," id. at 219-221.

Our conclusion that the Legislature's intent to end a veteran's property tax exemption for a surviving spouse upon remarriage is consistent with both the language and intent of the legislation. While we do not perceive any ambiguity in the language and intent, we note that "all doubts are resolved against those seeking the benefit of a statutory exemption." Twp. of Teaneck v. Lutheran Bible Inst., 20 N.J. 86, 90 (1955). It is not our intent to deny a tax exemption to the widow of a disabled combat-veteran. But it is not our role to amend statutes to ordain what we may deem laudable. We construe statutes in accordance with long-standing principles, including the "fundamental legal tenet that a statute granting exemption from property taxation . . . is subject to strict construction." Int'l Schs. Servs., Inc. v. W. Windsor Twp., 207 N.J. 3, 15 (2011). This principle applies to the disabled veteran's exemption: "[I]f there is to be any doubt as to the applicability of the exemption, such doubt must be resolved in favor of denying the exemption." Fisher v. City of Millville, 29 N.J. Tax 91, 101 (Tax 2016), aff'd, 450 N.J. Super. 610 (App. Div. 2017). This interpretive rule "is based upon the fundamental [principle] of equality of the taxation burden." Twp. of Teaneck, 20 N.J. at 90.

The judgment of the Tax Court is reversed. We remand this matter to the Tax Court for entry of judgment in favor of defendant, Township of Toms River, in accordance with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1264-17T2