TAX COURT OF NEW JERSEY



**Kathi F. Fiamingo**
**Judge**

**120 High Street**
**Mount Holly, NJ 08060**
**Tel: (609) 288-9500 EXT 38303**

NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

August 13, 2019

Chester Kosarek, Esq.
Kosarek & Keane, L.L.C.
15 Kiel Avenue
Kinnelon, NJ 07405

Heather Lynn Anderson
Deputy Attorney General
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625-0106

> Re:  Jervis B. Webb Company v. Director, Division of Taxation
> Docket Nos. 000054-2016, 000269-2016, 000270-2016, 000271-2016,
> 000272-2016, 000273-2016, 000274-2016, 000275-2016, 000276-2016
> 000277-2016

Dear Counsel:

This letter constitutes the court's opinion with respect to the motion for summary judgment

filed by Jervis B. Webb Company ("plaintiff") and the cross-motion filed by the Director for

summary judgment.

Plaintiff asserts that it is entitled to an exemption from sales/use tax pursuant to N.J.S.A.

54:32B-8.22 on the materials and supplies included in the product it fabricated and installed at

Newark Liberty International Airport. That statute grants an exemption from tax on "[r]eceipts from sales made to contractors or repairmen of materials, supplies or services for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property of" exempt organizations. Ibid. Further, plaintiff maintains that the Director's requirement that it first refund the tax paid to its customer prior to obtaining a refund was an error. In opposition and in support of its petition for summary judgment, the Director asserts that plaintiff is not entitled to an exemption pursuant to N.J.S.A. 54:32B-8.22 because it did not perform the work as part of a contract with an exempt organization.

The court finds that the under the facts of the case before this court, the legislative purpose for the exemption of N.J.S.A. 54:32B-8.22 has not been demonstrated by plaintiff relative to the materials and supplies included in the fabrication of the baggage handling system installed by it. The Director has demonstrated that the contract pursuant to which the installation at issue was between a non-exempt entity and the taxpayer. The exempt entity was not responsible for the cost of the work, nor the tax imposed on the materials included therein. As a result thereof, and for the reasons hereinafter detailed, the court denies plaintiff's motion and grants the Director's cross-motion.

## A. Findings of Fact[1] and Procedural History

Plaintiff is engaged in the fabrication, manufacture and installation of conveyor systems and is headquartered in Novi, Michigan. The Cities of Elizabeth and Newark own fee simple title

_____

[1] The following facts are based on the respective statements of Material Facts submitted by the parties to the extent those facts are admitted for the purposes of this motion. The court notes that the plaintiff attached various documents to its pleadings in support of its motion, including Supplement No. 26 and the Memorandum of Agreement hereinafter referred to. In the response to the plaintiff's statement of material facts, the Director did not "admit or concede the authenticity or contents of any such documents." Yet in the Director's statement of material facts submitted in support of the cross motion for summary judgment, the Director refers to these documents as

2

to the real property upon which the improvements constituting Newark Liberty International Airport ("EWR") are located. EWR is operated by the Port Authority of New York and New Jersey ("PA"), a tax exempt entity, pursuant to a long term lease with the Cities of Newark and Elizabeth.

United Airlines, Inc. ("United") is the surviving corporate entity of a merger between United and Continental Airlines, Inc. ("Continental") effective April 3, 2013. United operates flights out of Terminal C at EWR pursuant to a lease agreement between Continental and PA, dated January 11, 1985 ("1985 Lease"). As the successor to Continental, United succeeded to all contracts to which Continental was a party, including the 1985 Lease and the supplements and amendments thereto.

On or about September 10, 2008 PA and the United States Department of Homeland Security Transportation Security Administration ("TSA") entered into a Memorandum of Agreement "Relating to Baggage Screening Projects for Newark Liberty International Airport (EWR)" ("MOA"). The MOA sets forth the terms, and established the respective cost-sharing obligations and responsibilities of the parties with respect to the "construction and installation of a Checked Baggage Inspection System . . . and the installation of baggage conveyor components . . . to support the TSA's installation of" explosive devise detection systems at EWR, including Terminal C ("the project"). The MOA further provided that the TSA was responsible to pay 90% of the allowable costs of the project through reimbursement payments to the PA.

---

submitted by plaintiff, and cites provisions set forth therein. The court thus finds that the Director admits to the authenticity and contents of the referenced documents for the purposes of these motions.

Under date of July 10, 2010 Continental and PA entered into Supplement No. 26 to the 1985 Lease.  Supplement 26 expanded the area leased to Continental to include an area in which the checked baggage inspection system was to be housed and specified that

> since [Continental] is responsible for the operation, maintenance and management of Terminal C pursuant to the [1985 Lease], the EWR TSA Project as it related to Terminal C (the "Project") will require [Continental], and [Continental] hereby agrees, to perform the scope of work , as it relates to Terminal C, as set forth in the MOA subject to and in accordance with all of the terms and provisions and conditions of the MOA, the [1985 Lease] and of this Supplemental Agreement.

Other than granting Continental the additional leased area, PA had "no obligation under the Lease, as herein amended, for finishing work or preparation of any portion of the Additional Premises for [Continental's] use."  Continental agreed to "perform the Work  . . . at its sole cost and expense, subject to the terms and conditions set forth in the MOA for payment by TSA to the Port Authority and subject to the terms and conditions of this Supplemental Agreement, covering, among other matters, the release by the Port Authority to [Continental] of sums, if any paid to the Port Authority by the TSA for the Work."

Supplement No. 26 further provided that,

> Notwithstanding the submission by [Continental] to the [PA] of the contracts to be entered into by [Continental] or the incorporation therein of [PA] requirements or recommendations, and notwithstanding any rights the [PA] may have reserved to itself hereunder, the [PA] shall have no liabilities or obligations of any kind to [Continental] or to any contractors engaged by [Continental] or to others in connection with any proposed or actual contracts entered into by [Continental] for the Work or for any other matter in connection therewith and [Continental] hereby releases and discharges the [PA], its Commissioners, officers, representatives and employees of and from any and all liability, claim for damages or losses of any kind, whether legal or equitable, or from any action or cause of action arising or alleged to arise out of the performance

4

of any of the Work by [Continental] or pursuant to the contracts between [Continental] and its contractors.

Nonetheless, Supplement No. 26 indicates that the TSA appropriated funds for the project and that upon completion of portions of the project work, Continental would submit an invoice to PA, which was then to inspect and approve the work so completed; that thereafter PA would submit the invoice to the TSA; that Continental would be entitled to reimbursement for 90% of the "actual allowable, allocable and reasonable costs of the Work incurred by [Continental] in the performance and completion of the Work", as finally determined by the TSA; and that Continental was responsible for all costs and expenses of the project, "without reimbursement or payment by the Port Authority except to the extent federal funds have been paid to the Port Authority by the TSA. . ." Upon completion, "the City of Newark or the Port Authority, as applicable, shall own and have title to all personal property, improvements to real property, or other assets which are acquired under the MOA . . ."

In performing its obligations Continental contracted with a number of entities, including plaintiff. Specifically Continental and plaintiff executed two "Contractor-Owner" agreements[2] whereby Continental, designated as the "Owner", engaged plaintiff, designated as the "Contractor", to provide the "labor, materials and equipment" and to perform the work required to fabricate and install the baggage handling system component of the project. As part of their agreement, plaintiff installed baggage conveyor components as well as relevant architectural, mechanical, electrical and telecommunication infrastructure to support the conveyor systems

---

[2] The first contract amounting to approximately $4,875,101, involved the relocation of some existing inbound baggage handling systems to make room for the new baggage handling system. The second contract amounting to approximately $42,561,000 was for the fabrication and installation of the new baggage handling system and generated the majority of the tax at issue here.

5

within a new structure built as an addition to Terminal C. Part of the work performed by plaintiff included the installation of bar grating and intermediate structural support members incorporated into a new structure included within the expanded leased area.

Pursuant to the Contractor-Owner Agreements United bound itself to pay plaintiff the Contract Price established therein. Although the Contractor-Owner Agreements reference certain "contractual obligations the Owner has to the Port Authority of New York and New Jersey as well as the Transportation Security Administration" and sets forth the Owner's "intent to make those obligations transferrable" to the Contractor-Owner agreement, there is no corresponding indication that the obligations of United to make payment to plaintiff are limited by any agreement United may have with PA or TSA.

The Agreements required the plaintiff to "pay all sales, consumer, use and other similar taxes required by the law of the place where the Project is located. The Contractor shall work cooperatively with the Owner regarding any sales tax exceptions that may be applicable to the Work." The Contract Price included the cost of materials and all applicable taxes. Upon completion of the Work, title to "all Work, materials and equipment . . . pass[ed] to [United] upon receipt of [ ] payment by the Contractor, free and clear of all liens, claims, security interests or encumbrances."

Plaintiff performed its obligations under the Contractor-Owner Agreements and submitted periodic requests for payment. On or about May 21, 2014 plaintiff filed ten claims for refund of use tax paid with respect to the materials and supplies included in the fabricated product for the fourth quarter of 2011 through the first quarter of 2014.[3] The total amount of the claims for refund

---

[3] Plaintiff indicates it "misdesignated" the refund claims as refunds of "sales" taxes, but that the tax should have been designated as a Use Tax "in accordance with plaintiff's status as a fabricator/contractor."

filed was $1,248,034.90. On October 17, 2014, the Director, Division of Taxation ("Director") denied each of the refund claims. The reason set forth in the denials was "[n]o refund of moneys shall be made to any person until the person shall first establish to the satisfaction of the director of the Division of Taxation that such person has repaid to the customer the amount for which the application for refund is made."

Plaintiff filed administrative protests on January 6, 2015, pursuant to which an administrative conference was held on July 15, 2015. On October 22, 2015 a final determination, denying all of the refund claims, was issued. In that denial, the Director stated:

> In this instance [plaintiff] remitted to the State of New Jersey sales tax it claims it collected from its customer United Airlines. Until [plaintiff] documents that it paid United Airlines no refund check can be processed. [Plaintiff] did not provide approved Tenant Alteration Application or Applications, in the form supplied by the Port Authority detailing the installations in the two projects, documenting that those purchases become real property of the Port Authority and/or the City of Newark. It further was not documented if the Port Authority of New York and New Jersey or the United States Department of Homeland Security Transportation Security Administration reimbursed Continental for any portion that related to sales tax.

Subsequent to the issuance of the final determination, plaintiff and United entered into an Escrow and Agency Agreement ("Escrow Agreement"), "dated as of August 8, 2016", wherein United consented to the filing of refund claims for "any taxes collected on behalf of" United and agreeing that any tax refund received would be paid to the Escrow Agent for distribution in accordance with the terms thereof. The Agreement provides that United shall direct the Escrow Agent to pay $240,986.32 of the $1,243,488.61 of the refund, approximately 24%, to Webb.[4]

---

[4] The Escrow Agreement does not indicate how this amount was determined or why Webb is to receive that portion of the refunded taxes.

7

Plaintiff timely filed the complaints herein contesting the denials. Plaintiff filed the present motion for summary judgment and the Director cross moved for summary judgment.

## B. Discussion

### 1. Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In Brill v. Guardian Life Insurance Company, 142 N.J. 520 (1995), the New Jersey Supreme Court established the standard for summary judgment:

> [W]hen deciding a motion for summary judgement under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co., 142 N.J. at 523.]

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" Township of Howell v. Monmouth Cnty Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541).

The court finds that the material facts are not in dispute. The application of the law to the facts is disputed. Thus, the matter is ripe for summary judgment.

### 2. Legal Standard

"The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise." Aetna Life Ins.

8

Co. v. Newark, 10 N.J. 99, 105 (1952); Atlantic City Transp. Co. v. Dir., Div. of Taxation, 12 N.J. 130, 146 (1953). "Courts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984)). "Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306 (1993). Taxation's "interpretation will prevail as long as it is not plainly unreasonable." Koch v. Dir., Div. of Taxation, 157 N.J. 1, 8 (1999) (citation and internal quotation marks omitted). "[A]n administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits" GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. at 306.

3. Sales and Use Tax Act

The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. ("SUTA"), is broadly inclusive. Adamar of New Jersey v. Director, 17 N.J. Tax 80, 85-86 (Tax 1997), aff'd, 18 N.J. Tax 70 (App. Div. 1999). Generally, "[p]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected." Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, 102 N.J. 526, 548, app. dism., 481 U.S. 1001 (1987).

Taxpayers claiming an exemption bear the burden of demonstrating an exemption is applicable. G.E. Solid State, 132 N.J. at 306. ("[C]ourts have consistently recognized that tax exemptions are to be strictly construed against the claimant."); Global Terminal & Container Servs., Inc. v. Dir., 9 N.J. Tax 152, 158 (1987) ("[E]xemption statutes must be strictly construed, and the burden is on the taxpayer to establish entitlement to exemption.").

9

Several provisions of SUTA and the regulations issued thereunder are at play in this matter. Generally, N.J.S.A. 54:32B-3(a) imposes a tax upon "[t]he receipts from every retail sale of tangible personal property . . . except as otherwise provided in [N.J.S.A. 54:32B-1 et seq.]" Additionally, the tax is imposed on every sale of services involving the installation of tangible personal property, except "services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land . . ." N.J.S.A. 54:32B-3(b).

In keeping with the statute, N.J.A.C. 18:24-5.11 provides:

> (a) Where a fabricator/contractor sells his or her fabricated product, and as a part of that sale agrees to install the product at a location in this State, he or she may not collect tax from his or her customer for *installation charges* if the installation of his or her product results in an exempt capital improvement to real property. In such cases, the fabricator/contractor is, however, required to pay *use tax* directly to the Division of Taxation upon the value of his or her product. The use tax shall be computed on:
>
> 1. The price at which items of the same kind are offered for sale by him or her; or
>
> 2. If the fabricator/contractor makes no sales of items of the same kind, the tax shall be computed on the cost of all materials used in fabrication.
>
> (b) A fabricator/contractor who sells his or her fabricated product, and as a part of that sale agrees to install the product at a location in this State, is required to pay use tax on the product installed, in the same manner as described in (a) above, and is further required to collect the sales tax on that portion of the bill attributable to installation charges, unless the installation results in an exempt capital improvement.
>
> [N.J.A.C. 18:24-5.11 (emphasis added).]

Initially plaintiff references N.J.A.C. 18:24-5.11 to support its position that it is a fabricator/contractor and not subject to the tax on the capital improvement. It is clear that no sales

10

tax is due with respect to the *installation charges* where the installed product constitutes an exempt capital improvement. Here no such tax was paid, nor does the Director assert a claim for such tax. Instead the tax at issue is the *use tax* due from a fabricator/contractor on the value of its product. To the extent plaintiff relies on N.J.A.C. 18:24-5.11 to support its argument that the tax is not due on the materials and supplies, it is rejected as contrary to the plain language of the regulation.

Plaintiff cites to N.J.S.A. 54:32B-8.22 which provides an exemption from the sales tax for "receipts from sales made to contractors or repairmen of materials, supplies or services for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property of [exempt organizations]", including a public authority like the PA. N.J.S.A. 54:32B-9(a)(1). Additionally, plaintiff refers to the Director's regulations issued pursuant to the cited statute, including N.J.A.C. 18:24-5.12 referring to subcontractor services and purchases. In this regard, plaintiff contends that it is a subcontractor of United and that it is entitled to exemption because United had a contract with PA, an exempt organization.

Generally, N.J.A.C. 18:24-5.12 provides that purchases by a subcontractor are "treated in the same manner as purchases of a prime contractor." Additionally,

> [p]urchases of materials by subcontractors for use in fulfilling contracts with prime contractors are subject to tax, except where such purchases are for exclusive use in fulfilling contracts with a prime contractor that is fulfilling a contract with an exempt organization. (See N.J.A.C. 18:24-5.3, 5.4, and 5.5 for procedural requirements on exempt organization contracts.)
>
> [N.J.A.C. 18:24-5.12(a)(3).]

Similarly, N.J.A.C. 18:24-5.3 provides that sales tax is not payable where "[t]he purchase of materials and supplies is made for exclusive use in the fulfillment of a contract to improve or repair the real property of an exempt organization." Plaintiff asserts that it qualifies under the plain language of the statute and cited regulations.

11

"The plain language of a statute must be given effect by the courts." New Cingular Wireless PCS, LLC v. Dir., Div. of Taxation, 28 N.J. Tax 1, 22 (Tax 2014)(citing Merin v. MaglakiMerin v. Maglaki, 126 N.J. 430, 434 (1992).

> We must look first to the plain language of the statute "to accomplish our goal of determining and effectuating the Legislature's intent." In re Middlesex Reg'l Educ. Servs. Comm'n Name Change Request, 453 N.J. Super. 243, 251 (App. Div. 2018); see also Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553-54 (2009). We seek "further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Pizzullo v. New Jersey Mfrs. Ins. Co., 196 N.J. 251, 264 (2008).
>
> [Rosanna Pruent-Stevens v. Toms River Township, 458 N.J. Super. 501, 507 (App. Div. 2019).]

"[T]he rule of strict construction does not require a strained construction or a construction that begrudges. Rather, it means that the exemption is not to be extended beyond the ascertainable legislative intention." Millington Quarry v. Taxation Div. Dir., 5 N.J. Tax 144, 148 (1983) (citing Deubel v. Kervick, 33 N.J. 568, 574 (1960)).

The court finds that plain language of the statute and regulations does not support plaintiff's claim for exemption. Plaintiff's reliance on N.J.A.C. 18:24-5.12 is not well founded. In order to qualify as a subcontractor the court must first find that United is a "contractor" as that term is understood by the regulation. For these purposes,

> "contractor" means any individual, partnership, corporation, or other commercial entity engaged in any business involving erecting structures for others, or building, or otherwise improving, altering, or repairing real property of others. Contractor does not include the owner of the real property on which services are being performed. For example, a developer, who owns the land on which construction or landscaping is taking place, is not a contractor.
>
> [N.J.A.C. 18:24-5.2.]

12

United operates an airline and is clearly not in the business "involving erecting structures for others, or building, or otherwise improving, altering or repairing real property of others." If United is not a contractor, plaintiff cannot be considered a subcontractor for the purposes of the N.J.A.C. 18:24-5.12, and thus its reliance on that regulation for exemption is rejected. Moreover, even if United is deemed to be a "contractor" for the purposes of N.J.A.C. 18:24-5.2, plaintiff has failed to demonstrate that its purchase of materials and supplies were for the "exclusive use in fulfilling contracts with a prime contractor that is fulfilling a contract with an exempt organization." N.J.A.C. 18:24-5.12(a)(3).

Plaintiff's entitlement to exemption is founded on N.J.S.A. 54:32B-8.22. There the Legislature provided an exemption where the materials purchased were for the "exclusive use" of improving real property of an exempt organization. In Browning-Ferris Industries of South Jersey, Inc. v. Dir., Div. of Taxation, 10 N.J. Tax 96 (Tax 1988), aff'd 236 N.J. Super 521 (App. Div. 1989) the court examined the "exclusive use" requirement of the statute. There the plaintiff taxpayer operated a landfill under an agreement with the Township of Monroe, an exempt political subdivision, on Township property. The Township determined that the closure of the landfill at the end of its five-year contract with the taxpayer would be in its best interests and recommended closure to the N.J. Department of Environmental Protection ("DEP"). In a civil action brought by the DEP against the taxpayer to require it to file and comply with a closure plan, the Superior Court of New Jersey ordered that taxpayer comply and install certain improvements for the proper closure of the landfill. The taxpayer thereafter sought an exemption from the sales tax on the materials used in the closure plan as being "in furtherance of its contract with and for the exclusive use of the" exempt owner of the land. Id. at 100.

13

Judge Lario, noted that "statutes providing for exemption from taxes are to be strictly construed against those claiming entitlement thereto." Id. at 101. Further,

> [t]he obvious legislative purpose of [N.J.S.A. 54:32B-8.22] is to complement [N.J.S.A. 54:32B-9] by exempting the payment of sales tax when the tax would have been exempt initially, had the exempt organization itself performed the improvement or repairs, rather than have the work contracted and completed for it by another. Its purpose is to exempt the exempt organization from either directly or indirectly paying the tax. However, where there is no resulting benefit to the exempt organization, its purpose is not to benefit a purchaser, who is not otherwise exempt.
>
> [Ibid.]

The court found that the since the obligation to perform the closure was that of Browning-Ferris, and not the exempt organization, and because the Superior Court found that the exempt organization was not obligated for the payment of the cost of the materials or the resulting tax, the purchase of the materials was not exempt. In affirming the decision the Appellate Court held,

> Appellant effected the closure pursuant to court order, not under any agreement with the Township. The purpose of the exemption, N.J.S.A. 54:32B-9(a)(1), was to benefit the State and its political subdivisions. This provision requires that the political subdivision be "the purchaser, user or consumer. . . ." Ibid. Appellant's proofs did not overcome the doctrine of strict construction against those claiming entitlement to exemptions. Amerada Hess Corp. v. Tax. Div. Director, 107 N.J. 307, 319-320 (1987); Mal Bros. v. Taxation Div. Director, 124 N.J. Super. 55, 61 (App.Div.1973).
>
> [Browning-Ferris Indus. of S. Jersey, Inc. v. State, Dep't of Treasury, Div. of Taxation, 236 N.J. Super. 521, 522-23 (App. Div. 1989).]

Thus, demonstrating that the materials were utilized in work resulting in an improvement to the real property of an exempt organization is insufficient. The taxpayer must also demonstrate that the exempt organization was "the purchaser, user or consumer."

14

Here, the agreement to perform the work at issue was between taxpayer and United, a non-exempt organization. United's obligation arose in the context of its lease under which it was "responsible for the operation, maintenance and management of Terminal C." Thus it was United's obligation to perform the work pursuant to the 1985 Lease, as amended by Supplement No. 26, not PA. The agreement between United and the PA clearly indicates that United is required to perform the work at its sole cost and expense. Any obligation of the PA to reimburse United for the cost of the work being performed was conditioned upon payment to it of funds by the TSA. Thus, the PA was not obligated to pay for the work, except and only to the extent it received funds from the TSA, while United was obligated to perform the Work regardless of reimbursement therefor. Moreover, any reimbursement available to United was limited to the TSA's agreement to pay 90% of allowable costs, not the entire cost of the contract price set forth in plaintiff's contract.

United's agreement with plaintiff to perform the work did not obligate any exempt organization with any interest in the EWR real property. No exempt organization was the "purchaser, user or consumer" of the materials involved in the fabrication installed by taxpayer, as contemplated by the Browning-Ferris decisions. Moreover, only United was obligated to pay plaintiff for its work. Although plaintiff was obligated to perform the work in accordance with requirements of the PA/TSA, United's obligations to pay plaintiff for the work performed were not conditioned upon any payments to be made to United.

Browning-Ferris requires that in order to qualify for the exemption, plaintiff must demonstrate that an exempt organization was the "purchaser, user or consumer" of the improvements. Instead the proofs submitted herein demonstrate that United was the user of the improvements as that phrase was construed by the court in Browning-Ferris. Although United was

15

obligated to perform the improvements in accordance with Supplement No. 26 with PA, it was required to do so at its sole cost and expense. In reality, the cost of the project, and the payment of any taxes thereon, was borne either by the TSA, which is not the owner of the subject property, or United, which is not an exempt organization. In either case, the tax imposed is not exempted by a strict construction of the statute.

Plaintiff next references the Escrow Agreement it entered into with United. There plaintiff refers to the amounts paid as "sales tax collected from United" and agrees that a portion of those amounts will be paid to United with approximately 24% payable to plaintiff. To the extent plaintiff receives the benefit of any refund paid hereunder, it is clear that the grant of an exemption would not further the legislative purpose of N.J.S.A. 54:32B-8.22 and N.J.S.A. 54:32B-9. Further, plaintiff's assertion that the tax paid was a sales tax charged to and paid by United is contrary to the very position plaintiff presents in its supplemental brief. There plaintiff argues that it was the entity required to pay its own tax and that the tax was included in the price charged. Thus plaintiff argues that it is the entity to whom the refund is due. Under those circumstances, it is without doubt that the legislative purpose for the exemption of N.J.S.A. 54:32B-8.22 would not be furthered by the refund of tax.[5]

Although not necessary for the resolution of this matter, the court will also address plaintiff's contention that its refund claim was erroneously denied on the "sole basis" that it did not first repay United the amount for which the application for refund was made. The requirement

---

[5] As plaintiff continues to argue for both positions it is not entirely clear whether plaintiff intends to pay over any amount to United. Nonetheless, as set forth above, the court is not convinced that the Escrow Agreement provisions satisfy the requirements of N.J.S.A. 54:32B-8.22 in any event.

16

that a repayment of the tax to the customer arises by virtue of N.J.S.A. 54:32B-20(a) which provides,

> (a) In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within four years from the payment thereof. Such application may be made by a customer who has actually paid the tax. Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, provided that the application is made within four years of the payment to him by the customer, *but no actual refund of moneys shall be made to such person until the person shall first establish to the satisfaction of the director, under such regulations as the director may prescribe, that the person has repaid to the customer the amount for which the application for refund is made.* The director may, in lieu of any refund, allow credit on payments due from the applicant.
>
> [N.J.S.A. 54:32B-20(a) (emphasis added).]

Plaintiff's assertion that the "sole" basis for the denial of the refund was plaintiff's failure to repay the tax to United is factually inaccurate. The final determination issued in this matter states:

> [Plaintiff] remitted to the State of New Jersey sales tax it claims it collected from its customer United Airlines. Until [plaintiff] documents that it paid United Airlines no refund check can be processed. [Plaintiff] did not provide approved Tenant Alteration Application or Applications, in the form supplied by the Port Authority detailing the installations in the two projects, documenting that those purchased become real property of the Port Authority and/or the City of Newark. It further was not documented if the Port Authority of New York and New Jersey or the United States Department of Homeland Security Administration reimbursed Continental for any portion that related to sales tax.

Thus plaintiff's position that the failure to repay United was the sole basis for the denial is not an accurate portrayal of the Final Determination. While the Director asserted that it *could not issue a refund check* to plaintiff until such repayment had occurred, the Director also provided an

17

explanation for the *denial of the underlying claim.* In <u>New Cingular Wireless PCS, LLC v. Dir., Div. of Taxation</u>, 28 N.J. Tax 1, 15 (Tax 2014) the court found that "[n]othing in N.J.S.A. 54:32B-20(a) requires that the person required to collect the tax repay that tax to its customers before making its application for a refund." A taxpayer has a "statutory right to have its refund application considered by the Director without first having to repay the tax it collected to its customers." <u>Ibid.</u>

Here, the Director considered plaintiff's claims for refund and denied them for substantive reasons. Additionally, the Director noted that no refund check *could be processed* before plaintiff repaid its customer. It is clear that plaintiff's application was considered but denied for reasons other than the obligation to repay its customers.

Finally, the court has reviewed and rejects plaintiff's contention that Advisory Opinions issued by the State of New York Commissioner of Taxation and Finance are persuasive authority in this matter. Contrary to plaintiff's assertion the New York statute which is the subject of those opinions is not "identical" to N.J.S.A. 54:32B-8.22 and it does not appear that the facts are on point.[6] Moreover, the court is unaware of the circumstances under which the Opinions were issued and what weight, if any should be accorded to them.

### Conclusion

For all of the foregoing reasons, plaintiff's motion for summary judgment is denied. The Director's motion for summary judgment is granted. Plaintiff's complaint is dismissed.

Very truly yours,


Kathi F. Fiamingo, J.T.C.

---

[6] Although the Opinions reference "Baggage Handling Systems", they were requested by and are directed to the Airline operator and not to any independent contractor engaged by the airline.

18